419 So.2d 25 (1982)
JOE BONURA, INC.
v.
Livingston S. HIERN, and Housemaster Corporation.
No. 13108.
Court of Appeal of Louisiana, Fourth Circuit.
July 30, 1982.
Rehearing Denied September 24, 1982.
*26 Carl J. Schumacher, Jr., C. David Schumacher, Schumacher Law Corp., Ltd., Richard K. Simoneaux, Simoneaux & Simoneaux, New Orleans, for plaintiff-appellant.
Law Offices of Guy W. Olano, Jr., A Professional Law Corp., Frank P. Tranchina, Jr., Alfred J. Ferry, Kenner, for defendants-appellees.
Before GULOTTA, AUGUSTINE, and CIACCIO, JJ.
CIACCIO, Judge.
The plaintiff, a general contractor, filed suit pursuant to an oral construction contract, to recover monies allegedly due for the repair and renovation of the defendant's apartment units. The suit also sought recognition of a contractor's privilege and lien against the property. Following a trial on the merits, the trial court dismissed the plaintiff's suit and the plaintiff filed this devolutive appeal.
The facts are as follows:
In early 1979, Joe Bonura met with Livingston Hiern, president of Housemaster Corp., at the residential office of the defendant, to discuss certain construction work to be performed by Joe Bonura, Inc. on properties owned by the Housemaster Corporation. The corporation was engaged in the development and sale of real estate and owned several apartment buildings which were located at 4415, 4435, 4443 and 4445 Wilson Avenue in New Orleans. The units which form the basis of this controversy were located at 4443 and 4445 Wilson Avenue and consist of six two bedroom apartments per unit. In June, 1979 the parties contracted for Bonura to make extensive renovations, improvements and repairs of these two buildings, in order that they could be sold as condominiums.[1]
The agreed price for the work is in dispute. The work began in June, 1979 and progressed through October, 1979. Itemized billing statements were sent by the plaintiff to the defendant from the time the work began in June, 1979 through April, 1980. The construction work stopped after the defendant had completed the major work on the building at 4443 Wilson Avenue.[2] *27 At this time, the apartment at 4443 Wilson was basically complete, except for certain minor repairs and the final plumbing and electrical inspections. The total amount billed by the plaintiff for the completed work was $175,440.93. The total payments by the defendant were $146,000.00. The unpaid balance of $29,440.93 constitutes the amount for which the plaintiff sues.
After the work stoppage by the plaintiff, the defendant hired Marion Fritscher to complete the work at 4445 Wilson Avenue and to do the rehabilitation work at 4415 and 4435 Wilson Avenue. The total cost of the completion work was $123,066.69, which included $9,000.00 in supervisory fees.
The record reveals several facts to be in dispute. There is conflicting testimony concerning the price agreed upon for the construction contract and the circumstances surrounding the work stoppage.
Mr. Bonura testified that he believed that the Wilson Avenue property was owned personally by the defendant Livingston Hiern and that Mr. Hiern was personally responsible for the contractual obligations under the construction contract. He testified that he told Mr. Hiern that the work was to be performed on the basis of cost plus 10% overhead and 15% profit. He stated that he had inspected some of the apartment units and that he told the defendant that he thought it would take $70,000 to remodel the buildings. He further testified that he could not give a firm price because he had not seen all the units and, at the time of the quotation of price, he was unaware of the severe vandalism of certain apartments and of the defendant's desire to add additional building items which were not a part of the original contract. The plaintiff also testified that the defendant never complained about the quality of the work or the completion of the work, nor did he complain about the bills. Bonura said that he stopped work when the defendant failed to pay the outstanding bills for the work that had been completed.
The defendant, Livingston Hiern, testified that he was told by the plaintiff that the total cost of the renovations, repairs and improvements was $70,000 for both buildings. The amount was to consist of $57,000 plus $13,000 for new roofs and repairs to the upstairs balcony railings. He said that the plaintiff told him that the job could be done on a cost plus 10% overhead and 15% profit, but that when the defendant asked for a firm price, the plaintiff told him $70,000. Mr. Hiern stated that the plaintiff was aware that the Wilson Avenue property was owned by Housemaster Corporation and that the contract was with the corporation because all permits for work were secured in the name of the defendant company and the bills were paid with company checks. Mr. Hiern testified that he made no additions to the work which was originally agreed upon under the contract. He stated that the vandalism which took place consisted of stolen paint and broken windows, however, he contended that replacement of the windows was included in the job. With regard to the billings, the defendant stated that he never questioned the addition of overhead and profit to the bills. He testified, however, that he did occasionally discuss the bills with the plaintiff's wife because she had prepared them.
He stated that he became concerned between June and September, 1979 when he was paying $10,000 to $15,000 every two weeks. He stated that he went to the job site and spoke to the general foreman, Garland Russell. The defendant told Mr. Russell he had to talk with the plaintiff because the price of the job was getting too high. He expressed his concern to Mr. and Mrs. Bonura when the amount of the bills exceeded $70,000. He then spoke to the plaintiff about stopping the job, however, he realized that he was facing a dilemma because the units were partially complete and could not be rented. The defendant testified that the plaintiff told him that there were going to be cost overruns but the *28 amount would not be great as the materials had been paid and the major subcontractors had been paid. The defendant then told the plaintiff to at least complete six units and then he instructed the plaintiff to stop work. This situation occurred in October, 1979 and the defendant testified that the costs at this time were between $90,000 and $100,000. He stated that at the end of the billings, the cost had jumped to $176,000.
On appeal, the plaintiff argues that the construction contract that he agreed to with the defendant was a cost plus a percentage contract pursuant to which he is owed $29,440.93. In attacking the trial court's ruling that the price charged under the contract was unreasonable, the plaintiff contends that the testimony of the expert, Marion Fritscher, was irrelevant and immaterial. The plaintiff reasons that the expert failed to establish a basis of comparison of cost, as the witness did not show that his job and the plaintiff's job were quantatively or or qualitatively comparable.
Therefore, this Court must decide the following issues: (1) What was the nature of the contract entered into by the parties? (2) If it was a cost-plus contract, did the plaintiff bear its burden of proving the costs incident to the contract? (3) Were the costs reasonable? and (4) Did the trial court err in relying upon the testimony of the expert, Marion Fritscher, in finding that the costs were excessive?
Nature of the Contract
There are three basic types of construction contracts: lump sum contracts; cost plus a percentage of the cost contracts; and cost plus a fixed fee contract. See: Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941). In a cost plus a percentage of the cost contract, the owner reimburses the contractor for the costs of the material and labor and the contractor's profit or gain is to be a certain percentage of the total cost of the project. Standard Oil Co. of Louisiana v. Fontenot, supra. Planning Systems Corp. v. Murrell, 374 So.2d 719 (La.App., 4th Cir., 1979); writ den. La.App., 376 So.2d 319 and La.App., 377 So.2d 843.
It is evident from a review of the record that the lower court, when faced with a conflict in the testimony, resolved the conflict in favor of the plaintiff and his reasons for judgment imply that the parties had entered into a cost plus contract. Our review of the record convinces us that the trial court was not clearly wrong in its findings. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
The plaintiff testified that he agreed with the defendant to be paid on a cost plus basis. He was to be paid ten percent for overhead and fifteen percent for profit. He originally estimated that the job would cost $70,000. He stated that he never gave a firm price because this would be impossible considering the bad condition of the premises. The bills from Bonura, Inc., which were paid by the defendant, clearly indicated the plaintiff's "10% overhead" and "15% profit." (Exhibit P 1) The testimony of the general foreman, Garland Russell, supported the plaintiff's position. Mr. Russell testified that although he was not present when the plaintiff and defendant discussed price, the plaintiff had told this witness that the job was to be calculated on a "time plus basis." (Tr. 49-50).
The defendant admitted that this was the first time that he had been involved in a cost plus contract and he did not like it. The defendant argues that he considered the $70,000 figure to be a ceiling. However, he testified that he authorized the completion of at least six apartments, even after he knew the price would exceed $70,000.
These facts satisfy us that a cost plus contract had been entered into by the parties.
Cost Owed Pursuant To The Contract
The plaintiff alleges that the defendant owes the sum of $29,440.93, this figure being the difference between the total billings less the total payments under the construction contract. The defendant denied further indebtedness and asked that the plaintiff be held to a standard of strict proof.
*29 Under a cost plus contract, the contractor is hired in a supervisory capacity and when the owner cancels the contract, the contractor is entitled to reimbursement for labor and materials and the profit thereon at the time of cancellation. Delta Paving Co. v. Woolridge, 252 La. 161, 209 So.2d 581 (La.App. 4th Cir., 1967). Likewise, the owner is not entitled to recover for the cost of completion upon cancellation of the contract. Kerner v. Gilt, 296 So.2d 428 (La.App. 4th Cir., 1974), writ den. 300 So.2d 185. The rationale for such denial is that the contractor has been paid commensurate with the progress of the work done, therefore, presumably neither the contractor nor the owner has sustained any loss. Planning Systems Corp. v. Murrell, supra.
Under a cost plus contract, where the owner denies being indebted to the contractor, the contractor has the burden of proving each and every item of expense in connection with the job, and he must itemize each and every expenditure made by him. Planning Systems Corp. v. Murrell, supra.
In this case the plaintiff identified, in globo, a series of bills, periodic statements of those bills and balance sheets reflecting expenses and payments concerning the job on Wilson Avenue. The identification and introduction into evidence of these documents satisfied the plaintiff's burden of proving each and every item of expense in connection with the job.
The contractor who is involved in a cost plus contract is under an obligation to see that the owner gets value received. Lagasse et al. v. Allen, 219 La. 745, 54 So.2d 6 (La., 1951). The contractor must show that his work was performed efficiently and without the necessity of recurring remedial work suggestive of poor workmanship, so that the owner is not faced with excessive labor cost. Kerner v. Gult, supra. Therefore, when there exists a contract to do a job for whatever it might cost, as in the case of a cost plus contract, it is implicit that the price charged will not be whatever the contractor sees fit to charge, but will be whatever may be shown to be a reasonable and proper cost. Wendel v. Maybury, (on rehearing), 75 So.2d 379 (La.App. Orleans, 1954) citing Lee v. National Cylinder Gas Co., 58 So.2d 568 (La.App. Orleans, 1952). In finding that the charges were excessive and were not reasonable the trial court was greatly influenced by the testimony of the expert witness, Marion Fritscher.
The plaintiff offered no expert testimony to substantiate that the charges were reasonable and not excessive, but relied upon the direct testimony of Mr. Bonura, the president of the corporation, and another lay witness who was an employee of plaintiff. Their testimony did not convince the trial court that the charges were reasonable and not excessive. We have reviewed the record in this matter and we do not find that the trial court findings are clearly wrong. Arceneaux v. Domingue, supra.
There was only one expert witness called to testify with regard to the nature of the costs involved in this case, a Mr. Marion Fritscher. Mr. Fritscher was obviously qualified as an expert in the field of construction. He had been a general contractor since 1957, having built over 1,400 houses, had constructed a large number of doubles and fourplexes and 16 condominiums. He had been involved in both new construction and renovation work. His work involved residential and commercial construction.
Mr. Fritscher testified that he worked on four apartment complexes on Wilson Avenue, including the two which are the subject of this litigation. He testified that the apartment buildings located at 4443 and 4445 Wilson Avenue consist of six two bedroom apartments per unit, for a total of twelve apartments. The two apartment buildings located at 4415 and 4435 Wilson contain ten apartments per unit, for a total of twenty apartments. These buildings consist of one bedroom apartments.
Mr. Fritscher testified that at the time he started work on these apartments the complex at 4443 Wilson had been completed by the plaintiff, except for the final inspections *30 for wiring and plumbing and some minor rewiring of the units. The complex at 4445 Wilson was incomplete in that it needed additional electrical and plumbing work. The completion of the plumbing on these apartment units cost an additional $4,900, and the completion of the electrical work cost $2,150. The witness stated that he could not observe the materials used on the building located at 4443 Wilson, but that the downstairs apartment at 4445 Wilson contained extensive used wiring.
The expert testified that before beginning repairs to 4415 and 4435 Wilson he stripped these apartments down to the stud walls. He completely renovated these units with all new materials, except for three used tubs.
Mr. Fritscher testified that the total cost for the twenty units located at 4415 and 4435 Wilson Avenue was $123,016.69.[3] The total cost of the twelve units located at 4443 and 4445 Wilson Avenue was $146,000.00 paid to the plaintiff, plus the completion amount of $6,050[4] for a total cost of $152,050.00.
The expert witness testified with regard to an analysis of these total cost figures:

 4415 & 4435 Wilson (20 Apartments) 4443 & 4445 Wilson (12 Apts.)
 Electric: $720 per apartment $1,845 per apartment
 Plumbing: $2,475 per apartment $3,471 per apartment
 Labor: $2.00 per square foot $6.50 per square foot

Based upon this analysis, the expert witness concluded that the costs were excessive for these particular items charged by the plaintiff. (Tr. 82)
Under cross examination, the witness admitted to certain minor variances in the work completed by himself and that completed by the plaintiff.[5]
We take cognizance of the fact that the buildings renovated by the plaintiff and those renovated by the expert were in the same locality and the work was completed in a time frame which was in close proximity. The work done and materials used were comparable though not exact. There exists a large unexplained difference in cost when one compares the costs involved in the renovation of twelve two-bedroom apartments using considerable used materials, with twenty one-bedroom apartments using nearly all new materials. Although the evidence presented by the defendant's expert was not as precise as would have been desirable, it presents a sufficient basis upon which the trial judge could have reasonably found that the plaintiff's costs were excessive. The trial judge did not commit manifest error in this regard.
For the reasons assigned, the judgment of the trial court is affirmed. Costs are assessed against the appellant.
AFFIRMED.
NOTES
[1] The work involved plumbing, electrical work, carpentry, masonry, roofing, sheetrock, painting, aircondition and heating work, iron work, carpeting, fencing, cleaning, clearing and painting.
[2] The plaintiff testified that the work stopped because the defendant was unable to pay. The defendant testified that he asked the plaintiff to stop working because of the cost overruns.
[3] This amount includes a $9,000 supervisory fee.
[4] This consists of $4,900 for plumbing and $2,150 for electrical work.
[5] The expert testified that he did no roofing, fencing nor driveway work nor did he install shutters. He testified that he did outside work consisting of bricking mail box slots, putting in new railing and repairing steps.