544 So.2d 455 (1989)
M. CARBINE RESTORATION, LTD.
v.
Robert B. SUTHERLIN and Ann Reily Sutherlin.
No. 88-CA-2330.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1989.
Writ Denied June 30, 1989.
*456 William F. Grace, Jr., Douglas L. Grundmeyer, New Orleans, for plaintiff/appellant.
Ellen Widen Kessler, Lowe, Stein, Hoffman & Allweiss, New Orleans, for defendants/appellees.
Before BARRY, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiff M. Carbine Restoration, Ltd. appeals the trial court's judgment dismissing his action against defendant, Ann Reily Sutherlin. We reverse and award plaintiff $48,000, the balance due on his cost-plus construction contract.
Statement of the Facts:
Defendant Ann Sutherlin contacted plaintiff Michael Carbine, president of M. Carbine Restoration, Ltd., in March of 1984 about renovating a house she and her estranged husband, defendant Robert Sutherlin, planned to buy at 6023 Prytania Street. Carbine prepared drawings and submitted a proposal for performing the renovations at a estimated price of $177,000. The estimate was calculated on the basis of the projected cost of labor and materials in various categories, plus a 20 percent markup for overhead and profit. Carbine began renovations in mid-April, 1984. No contracts were signed between the parties. Although the defendants were not living together at the time, they purchased the home March 29, 1984. Mrs. Sutherlin intended to live in the house with the couple's three children; Mr. Sutherlin would live there only if the couple reconciled. On August 19, 1984, the Sutherlins filed a joint application for a loan at Audubon Federal Savings & Loan Association, where Mr. Sutherlin was chairman of the board. They obtained a loan for $558,000 to cover the cost of purchasing and renovating the residence, in consideration for which they mortgaged the property.
Carbine performed renovations and received a number of payments through the loan department of Audubon Federal. Testimony at trial indicates that Carbine was required to submit itemized statements to the loan officer in charge of the account before being paid. Several months after the project began, Carbine began to have problems collecting payment. On September 14, 1985, Carbine wrote a letter to Mrs. Sutherlin complaining that his invoices were not being promptly paid. The last payment was received on November 12, 1984. Carbine sent a letter to Mr. Sutherlin complaining about the late payments on January 14, 1985, stating that the work would be discontinued if payment was not forthcoming. Mrs. Sutherlin claims Carbine stopped work early in December of 1984, while Carbine claims he continued to perform the renovations until February of *457 1985. It is uncontroverted that the renovations were never completed.
Carbine filed suit against both Mr. and Mrs. Sutherlin on April 10, 1985. He claims that at the time the work was stopped, he had spent $159,000 on labor and materials, which entitled him to a total of $191,000 once his 20 percent markup for overhead and profit was added. The payments received totalled $143,000, leaving a balance due of $48,000.
The Sutherlins were divorced on March 25, 1985 and their community property was partitioned. On May 9, 1985, Mr. Sutherlin filed an individual petition for Chapter 7 bankruptcy and received an automatic stay on all suits against him for debts. He listed Carbine as an unsecured creditor with a contingent claim. Thereafter, Carbine filed and was granted a motion to dismiss Mr. Sutherlin from the suit without prejudice.
On March 15 and 16, 1988, Carbine proceeded to trial against Mrs. Sutherlin alone. Her defense at trial was based on her belief that she had no legal responsibility for the debt because Mr. Sutherlin always planned to pay it. The trial court issued judgment dismissing the suit against Mrs. Sutherlin on April 15, 1988. He stated as follows:
The Court finds no proof that defendant Ms. Sutherlin was obligated for the costs of repairs and renovations performed by plaintiff on the residence at Prytania Street. There will be judgment accordingly.
Mrs. Sutherlin's Responsibility to Pay
La.C.C. art. 2357, relative to satisfaction of obligations after termination of the community regime, states as follows:
An obligation incurred by a spouse before or during the community property regime, may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.
If a spouse disposes of property of the former community for a purpose other than the satisfaction of community obligations, he is liable for all obligations incurred by the other spouse up to the value of that community property.
A spouse may by written act assume responsibility for one-half of each community obligation incurred by the other spouse. In such case, the assuming spouse may dispose of community property without incurring further responsibility for the obligations incurred by the other spouse.
Under the provisions of the above article, each spouse is responsible for community obligations to the extent of the community property he or she received in the partition. Spouses who incur community obligations are also liable from their separate property.
Carbine seeks recovery of the balance on the contract from both Mrs. Sutherlin's portion of the community property and from her separate property. He claims that Mrs. Sutherlin incurred the obligation to his company because she was the party who contacted him requesting the renovations, she determined the scope and design of the work, she was going to live in the house with her three children even if she and her husband never reconciled, she was the party who met with him and directed his work on the project, and she applied for the loan to pay for the work jointly with her husband. Carbine says that she is therefore responsible for the debt even to the extent of her separate property. Alternatively, Carbine states that should this court find that Mrs. Sutherlin was not the spouse who incurred the debt, she should be held liable for the debt at least to the value of any community property received in the partition.
Mrs. Sutherlin admits that the debt is a community obligation, but claims that she is not liable because her husband incurred the debt by taking the responsibility for paying for the renovations. In support of her position, she states that Carbine knew that Mr. Sutherlin was paying for the renovations and that this knowledge is obvious in his letters. She claims that Carbine never requested payment from her prior to the filing of the instant suit. She does not *458 address the issue of whether she is responsible to the extent of the value of the community property she received in the partition, relying instead on her assertion that she is not the spouse who incurred the debt.
Under the codal article cited above, Carbine is correct that each spouse is responsible for community debts, regardless of who incurred the debts, at least to the extent of the value of the community property received by that spouse in the partition. The only exception to that rule, in the third paragraph of the article, does not apply in this case.
The determination of whether Mrs. Sutherlin should be held responsible for the debt even from any separate property she might own depends on whether or not she was the spouse who incurred the debt. There are no cases discussing when a spouse is considered to have incurred a debt; in all the cases interpreting that issue the identity of the incurring spouse is obvious, usually because one spouse acted unilaterally, often without the knowledge of the other spouse. However, in the instant case, the record reveals that both spouses were involved in securing Carbine's company to perform the renovation work; therefore, we hold that both spouses incurred the debt. Thus, Mrs. Sutherlin is responsible for the community obligation to the plaintiff both to the extent of the community property she received in the partition and from her own separate property.
Existence of a Cost-Plus Contract
Louisiana jurisprudence reveals that three types of construction contracts are recognized by the courts in this state lump sum contracts, cost plus a percentage of the cost contracts and cost plus a fixed fee contract. Joe Bonura, Inc. v. Hiern, 419 So.2d 25, 29 (La.App. 4th Cir.1982). The plaintiff claims that the parties in this case entered a cost-plus contract, while the defendant claims that the parties agreed that the $177,000 estimated cost would be the maximum cost.
This court has previously held that a building contract which provided an agreed price, but required the contractor to document his material and labor costs before receiving payment was a cost-plus contract. Planning Systems Corp. v. Murrell, 374 So.2d 719, 721 (La.App. 4th Cir.), writ denied 376 So.2d 319 and 377 So.2d 843 (La. 1979); Wendel v. Maybury, 75 So.2d 379 (La.App.Orl.App.1954). In reaching that conclusion in the Wendel case, the court considered the fact that the owners were allowed to make a number of changes in the project after the agreed price had been set and the fact that the owners were allowed to select various materials after the project was started. Id. at 381. The court noted that the owners would have had no interest in the cost of materials and costs had the contract been for a stipulated price and stated that "no contractor, after agreeing on a fixed price, would have permitted the owner to select materials which might cost more than those contemplated when the contract was entered into." Id.
The facts of the instant case are remarkably similar to those in the Wendel case. Although Carbine did estimate the cost of the project before beginning work, the record reveals that he was required to present documentation concerning the costs before he was paid by Audubon Federal. Additionally, Carbine claims, and Mrs. Sutherlin admits, that a number of things were not settled at the time the project began and that changes were made frequently during the course of the project. She claims that she told Carbine to make his estimate "high" and that she thought he had included enough flexibility to cover the requested changes. Nevertheless, we find that Carbine carried his burden of proving the existence of a cost-plus contract between the parties.
However, the inquiry does not stop there. Once the existence of a cost-plus contract has been established, the contractor also has a duty to submit an itemization of each and every expenditure made during the course of the project because there is an implicit agreement between the parties that the costs will be reasonable. Wendel, supra, 75 So.2d at 383; Kerner v. Gilt, 296 *459 So.2d 428, 431 (La.App. 4th Cir.), writ denied 300 So.2d 185 (La.1974). Presentation of invoices and statements of accounts, accompanied by proof of payment, is the proper method of proving the cost of improvements. Provenzano v. Populis, 428 So.2d 556, 558 (La.App. 4th Cir.1983). Proof of payment can be established by presentation of invoices marked "paid." Id. at 559.
At trial, Carbine offered numerous invoices and other documents to prove the value of the work done on the property. All were marked paid. Therefore, he met his burden of proving each and every item of expense in connection with the job.
The burden therefore shifted to the defendant to rebut plaintiff's evidence. In brief, Mrs. Sutherlin contests many of the charges, claiming that Carbine failed to prove that all the materials on the invoices went into her property and that all the labor billed was for work on her property. Most of her allegations are not specific. However, she does allege, but offers no proof, that the supervisor whose salary is listed in the documents was not present on the job at all times. She also complains about the fact that insurance and other fees are itemized on the bills, then marked up by 20 percent, rather than considered as part of the overhead. However, the estimate presented to the Sutherlins before Carbine began working on the project reflected the fact that the owners would be charged for supervision of the work, as well as for insurance.
Mrs. Sutherlin also complained that some of the work on the project had to be redone because of mistakes made by the contractor. Specifically, she testified that the molding in the library was not straight and that she insisted it be straightened at least twice. She also testified concerning a problem with a slab in one of the bathrooms, which eventually had to be taken up. This court has previously held in Joe Bonura, Inc., supra that prices charged by a contractor were not reasonable partly because of evidence that "recurring remedial work suggestive of poor workmanship" had to be done. 419 So.2d at 29. However, in Joe Bonura, Inc., the defendant presented convincing expert testimony that the prices were not reasonable. In the instant case, Mrs. Sutherlin failed to prove "recurring remedial work suggestive of poor workmanship." In fact, she indicated that Carbine did quality work which would have greatly increased the value of the property had the renovations been completed. Additionally, she failed to present any evidence that Carbine's prices were unreasonable under the circumstances.
None of Mrs. Sutherlin's other allegations are specific enough to be considered adequate to rebut any of the costs documented by Carbine. Therefore, she failed to rebut the plaintiff's prima facie case.
Conclusion:
Because of our finding that the parties entered a valid cost-plus contract, we pretermit discussion of the quantum meruit issue.
For the above and foregoing reasons, the trial judge's decision dismissing plaintiff M. Carbine Renovators, Ltd.'s claim against defendant Ann Reilly Sutherlin is reversed. The plaintiff is awarded $48,000, the balance due on the contract, plus all costs and interest from the date of judicial demand.
REVERSED AND RENDERED.