765 So.2d 1087 (2000)
SCHIRO-DEL BIANCO ENTERPRISES, INC.
v.
NSL, INC., Steven A. Bogdanoff and Arthur C. Stern.
No. 99-CA-1237.
Court of Appeal of Louisiana, Fourth Circuit.
May 24, 2000.
Rehearing Denied July 28, 2000.
*1088 W. Lee Kohler, Terrence L. Brennan, Deutsch, Kerrigan and Stiles, L.L.P., New Orleans, LA, Counsel for Defendants/Appellants (NSL, Inc. and Cynthia House).
F. M. Stoller, Ethan N. Penn, McCloskey, Langenstein and Stoller, LLP, New Orleans, LA, Counsel for Appellees (Steven Bogdanoff And Arthur Stern).
(Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY).
KIRBY, Judge.

STATEMENT OF THE FACTS
In 1996, Arthur Stern and Steven Bogdanoff (Stern and Bogdanoff) contacted NSL, Inc., a general contractor, about performing renovations to their future home. They described to the owner of NSL, Cynthia House, a general scope of work desired and, although the testimony is conflicting, advised her that they had a budget of between twenty and thirty thousand dollars. NSL prepared an estimate based upon the general scope of work described. Because Stern and Bogdanoff were concerned about keeping track of the cost, NSL proposed to perform work on a costplus basis, billing Stern and Bogdanoff weekly to allow them to keep track of the expenses as they were incurred.
*1089 NSL and Stern and Bogdanoff never entered into any written agreement.
Stern and Bogdanoff paid all but the last few weekly invoices, all of which clearly revealed the cost plus an additional "10% MARK UP" charge, or in one instance "10% P and O" charge.
Throughout most of the work period on the house, Stern and Bogdanoff requested changes or specific materials that were of higher quality and more costly. Among other things, these changes included: requesting more expensive bathroom fixtures, moving the locations of bathroom fixtures, running a new gas line to feed a clothes dryer in a closet on the third floor, applying sheetrock mud on exposed ceiling beams to give them a smoother appearance, repainting the entire apartment due to a color change requested by Stern and Bogdanoff, upgrading the electrical system to install more expensive light fixtures and three-way switches, installation of a built-in stereo system, requesting more expensive tile and countertops, and requesting more expensive entry door. Cynthia House, president of NSL, claims that Stern and Bogdanoff were made aware at all times when requesting these upgrades and additions that their requests would increase the cost of the job. Stern and Bogdanoff claim that House assured them that even with the changes, the work could be done within their budget. House admitted that she never gave specific information to Stern and Bogdanoff.
Stern and Bogdanoff visited the jobsite often and were aware of the work being performed. They were billed weekly for work actually performed and the invoices revealed in detail all expenditures made and costs.
After the sixth invoice had been paid, Stern and Bogdanoff had paid NSL slightly over $26,000 for the renovation work. Stern and Bogdanoff allowed NSL to work another two weeks on the job, but then refused to pay the seventh invoice when it was submitted for that two week period of work. On August 31, 1996, NSL reported to the jobsite only to discover that the locks had been changed. Stern and Bogdanoff refused NSL access to complete the work.
Upon locking out NSL, Stern and Bogdanoff paid other contractors to finish the work, alleging defective work was done by NSL.
Schiro del Bianco, a subcontractor which supplied granite countertops and floor tile, originally filed suit against Stern and Bogdanoff and NSL to recover on a Private Works Act Lien filed by Schiro del Bianco in the amount of $7,140.00. NSL filed a cross-claim against Stern and Bogdanoff for $21,907.85, the amount it claims it was owed for the work it performed or had performed for it by subcontractors, but which had not been paid. This amount included Schiro del Bianco's claim. Stern and Bogdanoff filed a cross-claim against NSL for the amounts incurred in completing the work.
The trial court judgment awarded $14,767.85 to NSL for work performed by it and its subcontractors. The trial court judgment also awarded $15,000 to Stern and Bogdanoff for work performed defectively and for the cost to finish the work. The trial court did not rule on the nature of this contract, but implicit in its judgment is the fact that it was not viewed as a cost plus percentage contract.

LEGAL ANALYSIS
This Court must decide the following issues: (1) What was the nature of the contract entered into by the parties? (2) Was NSL's work defective? (3) Can NSL recover on behalf of their subcontractors? And (4) Is NSL entitled to interest from the dates its unpaid invoices became due?

Nature of the Contract
Louisiana jurisprudence recognizes three basic types of construction contracts: lump sum contracts; cost plus percentage of the cost contracts (percentage contracts); and cost plus a fixed fee contract. M. Carbine Restoration, Ltd. v. *1090 Sutherlin, 544 So.2d 455 (La.App. 4 Cir. 1989); Joe Bonura, Inc. v. Hiern, 419 So.2d 25 (La.App. 4 Cir.1982); Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941). In a percentage contract, or cost plus percentage of the cost contract, the owner reimburses the contractor for the costs of the material and labor while paying the contractor a percentage of the total cost of the project for his profit or gain. Standard Oil Co. of Louisiana v. Fontenot, supra.
Here, Stern and Bogdanoff claim this was a fixed price contract, while NSL claims that this was a cost plus percentage contract. This court has held that a building or renovation contract which provided an agreed price, but required the contractor to document his material and labor costs before receiving payment was a cost plus percentage contract. M. Carbine Restoration, Ltd. v. Sutherlin, supra; Wendel v. Maybury, 75 So.2d 379 (La.App. Orl.1954); Planning Systems Corp. v. Murrell, 374 So.2d 719, 721 (La.App. 4 Cir.1979), writ denied 376 So.2d 319 and 377 So.2d 843 (La.1979).
In reaching that conclusion in the Wendel case, the court considered the fact that the owners were allowed to make a number of changes in the project after the agreed price had been set and the fact that the owners were allowed to select various materials after the project was started. (Citation omitted.) The court noted that the owners would have had no interest in the cost of materials and costs had the contract been for a stipulated price and stated that "no contractor, after agreeing on a fixed price, would have permitted the owner to select materials which might cost more than those contemplated when the contract was entered into." (Citation omitted.)
M. Carbine Restoration, Ltd. v. Sutherlin, 544 So.2d 455, 458 (La.App. 4 Cir.1989).
The facts of this case are very similar. The parties never agreed upon a fixed price. Stern and Bogdanoff were never presented with a written estimate of the cost of the work. The parties did not have a written contract. Stern and Bogdanoff never testified that they had a fixed price contract. Bogdanoff testified only that they had a budget, of which they claim to have advised NSL. Cynthia House testified that she told Stern and Bogdanoff that the work could probably be done for about $27,000 based on her understanding of the general scope of work, with the caveat that a number of items still remained to be priced.
The parties did not have a clearly defined scope of work. The parties toured the house, and Stern and Bogdanoff generally explained what they wanted done. There were no written plans nor any specification of the materials and fixtures to be used in the renovation.
During the course of the work, the scope of work changed based on requests by Stern and Bogdanoff for additional items of work and the selection, after the work had begun, of more expensive fixtures and materials. In fact, Bogdanoff testified as to three specific changes, which by themselves increased the price of the work by more than $3,000.
NSL's invoices were submitted weekly to Stern and Bogdanoff on a cost plus percentage basis and included all of NSL's invoices for materials and labor. Stern and Bogdanoff paid NSL's invoices without complaint and without questioning why they were being submitted on a cost plus percentage basis.
Therefore, following the rationale of the Wendel[1] and M. Carbine Restoration[2] cases, we hold that the parties had a cost plus percentage contract. It follows that any damages awarded Stern and Bogdanoff for "cost to complete the work" must be reversed, because in a cost plus *1091 percentage contract "cost to complete the work" is not recoverable. Joe Bonura, Inc. v. Hiern, 419 So.2d 25 (La.App. 4 Cir.1982). The owner can never recover the cost to complete the work in a cost plus percentage contract because the contractor is responsible for, and only receives payment for, work actually performed. Joe Bonura, Inc., supra.
Under a cost plus contract, the contractor is hired in a supervisory capacity and when the owner cancels the contract, the contractor is entitled to reimbursement for labor and materials and the profit thereon at the time of cancellation. (Citation omitted.) Likewise, the owner is not entitled to recover for the cost of completion upon cancellation of the contract. Kerner v. Gilt, 296 So.2d 428 (La.App. 4 Cir.1974), writ denied 300 So.2d 185. The rationale for such denial is that the contractor has been paid commensurate with the progress of the work done, therefore, presumably neither the contractor nor the owner has sustained any loss. (Citation omitted.) (Emphasis added.)
Joe Bonura, Inc. v. Hiern, 419 So.2d at 29.
The trial court's judgment, insofar as it awards damages to NSL for work performed, is affirmed. The sum total for work performed by NSL is $7,637.63 [$14,767.85 $7,130.22 (money owed non-party subcontractors)].

Defective work
Because, as a matter of law, we find this renovation agreement to be a cost plus percentage contract, NSL is entitled to payment for work performed minus the cost of repair for any defective work. Thus, in order for Stern and Bogdanoff to recover the cost of correcting alleged defective work, they had to prove, by preponderance of the evidence, that NSL had not fulfilled its obligation of workmanlike and professional performance. La. C.C. Art. 2769.
While Stern and Bogdanoffs expert testified that things were "misaligned" and "improperly done," at best his testimony uses ambiguous terms to describe the work of NSL, i.e. the terms used may imply defective work or may imply simply unfinished work. Stern and Bogdanoff's expert uses the term "deficient work" rather than "defective work." Nothing in the expert testimony, or in the record, causally connects the "deficient work" the expert spoke of with unworkmanlike performance, any more than with the fact that NSL was not permitted to finish working on the project. There is contradictory testimony that this was not due to unworkmanlike performance, but rather due to the fact that Stern and Bogdanoff did not allow NSL to complete their work, i.e. by locking them out of the premises.
The record contains an abundance of estimates of the cost of the work, however it does not offer anywhere in the expert testimony an estimate of just the cost to repair the alleged defective work. Not only is a finding of defective work not supported in the record, but there is even evidence to the contrary in a letter from Arthur Stern to Cynthia House complementing NSL on their workmanship on the tile and granite. Because Stern and Bogdanoff did not meet their burden of proving that NSL performed in an unworkmanlike manner, they cannot recover any cost of repairing alleged defective work. Therefore, we reverse the judgment of fifteen thousand dollars ($15,000) in favor of Stern and Bogdanoff.

Can NSL recover for its subcontractors?
The trial court allowed NSL to recover for subcontractors Spectrum Systems and Northside Electric, respectively in the amounts of $4,922.00 and $2,208.22, based on a theory of unjust enrichment. Between these subcontractors and Stern and Bogdanoff, there is no privity of contract. These subcontractors did not avail themselves of the remedies provided in the Private Works Act, LSA-R.S. 9:4801 et sequitur, nor are they a party to this litigation. Moreover, NSL has not paid *1092 these subcontractors, they have simply submitted bills from Spectrum Systems and Northside Electric. Because NSL has not incurred any actual damages, i.e. no actual expenses, they cannot recover on behalf of said subcontractors. As a matter of law NSL cannot recover for these subcontractors based upon a theory of unjust enrichment, because they cannot meet one requirement of the unjust enrichment theory, i.e. that there be no other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).[3] Here there is another remedy at law. The contractual obligation between NSL and these subcontractors has not prescribed, the subcontractors can still bring a suit to collect from NSL. In this scenario NSL could then bring a third party demand against Stern and Bogdanoff, in which case NSL could collect from Stern and Bogdanoff for the amounts they owe the subcontractors. Spectrum Systems and Northside Electric have not asserted any claims in this action, and the record does not show NSL has paid them. Therefore, NSL cannot collect for Spectrum Systems and Northside Electric and their recovery is reduced by $7,130.22 ($4,922.00 + $2,208.22).

Interest Due
La. Civil Code Art.2000 provides that "damages for delay in performance are measured by the interest on that sum from the time it is due, ... at the rate of legal interest as fixed by Article 2924." Therefore, NSL is entitled to recover interest on the amounts of its unpaid invoices from the dates those invoices became due. La.C.C. Art.2000; Ken's Construction Co., Inc. v. Liles, 560 So.2d 103, 106 (La.App. 3 Cir.1990); National Roofing and Siding Co. v. Gros, 433 So.2d 403 (La.App. 4 Cir.1983).
In an action on a building contract, interest is recoverable from the time the debt becomes due unless otherwise stipulated. Calhoun v. Louisiana Materials, Co., 206 So.2d 147 (La.App. 4th Cir. 1968), writ refused, 251 La. 1050, 208 So.2d 324 (1968); Teledyne Movible Offshore v. C & K Offshore, 376 So.2d 357 (La.App. 3rd Cir.1979).
National Roofing, 433 So.2d at 405.
The contract was terminated by Stern and Bogdanoff on September 1, 1996 when they locked NSL out of the job and refused to grant it further access to the premises. NSL's two unpaid invoices were issued on August 29, 1996 in the amount of $20,280.21[4] and September 6, 1996 in the amount of $1,627.64. Payment on these invoices was due no later than the date on which the contract was terminated or the date on which the last invoice was submitted, i.e. September 6, 1996. Interest is owed, at the legal rate, on the amount awarded to NSL ($7,637.63) from September 6, 1996.
In summary, the judgment is affirmed insofar as it awards damages to NSL for work it performed. However, the award of $14,767.85 is reduced by the sum of the two subcontractors' bills, ($4,922.00 + $2,208.22 = $7,130.22) which leaves a total of $7,637.63 that NSL will recover with interest. We reverse the judgment of $15,000 to Stern and Bogdanoff.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Supra.
[2] Supra.
[3] The five elements of unjust enrichment are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of `justification' or `cause' for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature. 36 Tul. L.Rev. 605, 610; Minyard, supra.
[4] This invoice included several subcontractors charges: Schiro del Bianco, $7,140.00 (who received payment and is no longer a party to this suit.); Spectrum Systems, $2,208.25; and Northside Electric, $4,922.00.