United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 02-30696
Summary Calendar

---

CABLEGUARD SYSTEMS, INC.,
UNITED STATES OF AMERICA FOR THE USE OF,

Plaintiff-Appellee,

VERSUS

MID-CONTINENT CASUALTY COMPANY; ET AL.,

Defendants,

MID-CONTINENT CASUALTY COMPANY;
PETE VICARI GENERAL CONTRACTOR, INC.,

Defendants-Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana
m 99-CV-2064-A

---

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:[*]

Pete Vicari General Contractor Inc. ("Vicari"), and its surety, Mid-Continent Casualty Company ("Mid-Continent"), appeal a judgment for Cableguard Systems, Inc. ("Cableguard"), in this Miller Act suit. Finding no error, we affirm.

I.

In 1997, Vicari became the general contractor on a project to construct a building for the United States Postal Service. As required by the Miller Act, 40 U.S.C. § 270a-(a)(2), Vicari (through its surety, Mid-Continent) posted a payment bond to protect its subcontractors and suppliers of labor and material.

Vicari subcontracted the electrical work to Phoenix Electrical, Inc. ("Phoenix"), which contracted with Cableguard, doing business as Dictograph Security ("Dictograph"), for the supply and installation of a fire alarm and security system. While Cableguard was performing its obligations in early 1998, a modification to the contract required it to install two extra fire pull stations. Cableguard could not do so, however, because of improper wiring in the post office.

Cableguard submitted a final bill to Vicari in July 1998 but did not receive payment. In October 1998, Cableguard removed the improper wiring and installed the correct wiring and the fire pull stations. Cableguard again sought payment, but Vicari refused. In November 1998, Cableguard therefore submitted written notice to Vicari of its intent to collect the contractual amount from the payment bond under the Miller Act, 40 U.S.C. § 270b(a). Cableguard then sued Vicari and Mid-Continent.

The parties disputed one key factual question, namely, whether Cableguard provided timely notice of its claim to Vicari. The Miller Act requires a supplier to give written notice to the general contractor "within ninety days from the date on which [the supplier] did or performed the last of the labor or furnished or supplied the last of the material[.]" 40 U.S.C. § 270b(a); *see generally J.D. Fields & Co. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2001). Cableguard's notice was timely if its October 1998 work is characterized as "labor," but not if it is characterized as "repairs." *See United States ex rel. Ga. Supply Co. v. United States Fid. & Guar. Co.*, 656 F.2d 993, 995-96 (5th Cir. Unit B Sept. 1981).

The district court denied the parties' motions for summary judgment on this factual question and submitted the case to a jury. The jury found that the October 1998 work was "labor" under the Miller Act and, hence, that Cableguard had provided timely notice. The court then entered judgment for $51,261.41, the stipulated amount of contractual damages, plus pre-judgment interest of $13,290.77.

On appeal, Vicari and Mid-Continent do not challenge the finding that the work was "labor,"[1] but argue that several alleged proce-

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Actually, they raise this issue in their reply (continued...)

dural and evidentiary errors require reversal.

## II.

Vicari challenges Cableguard's capacity to sue. The district court entered summary judgment for Cableguard on this question. Reviewing the judgment *de novo*, *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 382 (5th Cir. 2000), and applying Louisiana corporate law, FED. R. CIV. P. 17(b), we affirm.

Vicari contends that Cableguard lacks capacity to sue for two reasons. First, Phoenix contracted with Dictograph, not Cableguard, to install the fire alarm and security systems. Second, that contract prohibits assignment without Phoenix's written consent. Vicari concludes that without a valid contract between Cableguard and Phoenix, Cableguard cannot recover against the payment bond.

Vicari mistakenly assumes, however, that Cableguard and Dictograph are different entities. In fact, Edgar Rea, Cableguard's president, attested that Dictograph is merely an assumed trade name of Cableguard. Under Louisiana law, "a corporation may enter into a binding contract under an assumed name absent any fraud or deceit." *Pro Source Roofing, Inc., v. Boucher*, 822 So. 2d 881, 884 n.2 (La. App. 2d Cir. 2002). Vicari produced no evidence to dispute the identity of Dictograph and Cableguard and has not alleged fraud or deceit. Thus, Cableguard has

capacity to sue under Louisiana law.

## III.

Vicari appeals the decision to admit into evidence a work order for the October 1998 work. Vicari argues that the work order, which Cableguard offered to prove that it had performed work within the Miller Act's ninety-day period, was inadmissible hearsay. The court admitted the work order under the business-records exception to the hearsay rule. FED. R. EVID. 803(6). We review this evidentiary ruling for abuse of discretion, *United States v. Wells*, 262 F.3d 455, 459 (5th Cir. 2001), and find no abuse.

Rule 803(6) creates an exception to the hearsay rule for a record "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . ., all as shown by the testimony of the custodian or other qualified witness[.]" FED. R. EVID. 803(6). Rea and Frank Soehnlein, Cableguard's general manager, competently testified to these foundational requirements. In particular, they explained that Cableguard installs fire alarm and security systems in the course of its regular business and regularly uses work orders to instruct its employees and bill its customers. Rea also identified the notation "FO" on the work order as the initials and handwriting of Frank Ohlinger, the employee who installed the fire pull stations.[2]

Vicari nevertheless argues that "the source of information or the method or circumstances of preparation [of the work order] indicate lack of trustworthiness." FED. R. EVID. 803(6); *Wells*, 262 F.3d at 459-60 ("Whether

_____

(...continued)
brief, provoking a motion from Cableguard, to strike the reply brief. We do not consider issues not raised in an appellant's opening brief, *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 179 (5th Cir. 2000), so we will not address this issue, and we therefore deny Cableguard's motion as moot.

_____

[2] Cableguard could not call Ohlinger as a witness, because he died before trial.

3

evidence is admissible under Rule 803(6) is chiefly a matter of trustworthiness.") (quotation marks omitted). First, Vicari contends that Cableguard prepared the work order in anticipation of this lawsuit, not as a genuine business record. The record, however, contains no evidence to support this assertion. Second, Vicari argues that Ohlinger "may" not have performed the work in October 1998 and that he "possibly" forged the work order. Again, the record does not support this rank speculation, as Vicari's use of conditional verb tenses and adjectives reveals.

Third, Vicari notes that the local postmaster did not sign the work order on the customer line. Yet, Rea's uncontroverted testimony explains this supposed discrepancy. Cableguard used work orders to instruct its employees on a particular assignment and to bill its customers. On a fixed-price contract, however, the customer already had approved the job and the price; thus, Cableguard did not need the customer's signature on the work order. Because the post office project was a fixed-price contract, Cableguard did not need the postmaster's signature. And, in any event, Phoenix, not the postmaster, was Cableguard's customer on the contract.[3]

---

[3] Vicari also challenges what it calls the court's decision to exclude evidence that Vicari paid Phoenix. At a pretrial conference, the court excluded the evidence as irrelevant under the Miller Act. After Cableguard presented its case, the court reversed itself and ruled that Vicari could offer evidence of payment from Vicari to Phoenix within unspecified "strict guidelines." Peter Vicari then testified that Vicari had paid Phoenix. Vicari's counsel also reminded the jury of this testimony in closing arguments. In other words, the court did not exclude the evidence. We therefore find the
(continued...)

## IV.

Vicari argues that the district court erred by refusing to give a proposed jury instruction.[4] We review the court's refusal to give the instruction for abuse of discretion, which we will find only if the jury instruction as a whole is not a correct statement of the law and does not clearly instruct the jury on the legal principles applicable to the factual issues before them. *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 293 (5th Cir. 2002). There is no abuse of discretion, because the proposed instruction was not relevant to the factual dispute before the jury.

Vicari asked the court to instruct the jury that a supplier to a subcontractor cannot extend the ninety-day notice period by furnishing labor or material directly to the general contractor. As a statement of law, this instruction is certainly correct. *See United States ex rel. Harris Paint Co. v. Seaboard Sur. Co.*, 437 F.2d 37 (5th Cir. 1971). But the instruction is as irrelevant to this case as it is correct. The key factual dispute at trial was whether Cableguard performed "labor" or "repairs" in October 1998 (which in turn determined whether it gave timely notice to Vicari). However characterized, though, there is no factual dispute that Cableguard performed the work pursuant to its contract

---

[3](...continued)
entire issue bewildering, especially because Vicari does not identify, on appeal, what other evidence or testimony it would have introduced.

[4] Vicari actually appeals the court's refusal to give eight proposed instructions, but we treat its arguments on seven of these instructions as waived for failure to brief adequately on appeal. FED. R. APP. P. 28(a)(9)(A).

with Phoenix, not for Vicari. The court therefore did not err.

## V.

Vicari appeals the decision to use a general verdict. The form asked simply whether Cableguard had provided labor or materials within ninety days of its written notice to Vicari. Vicari argues that the court instead should have used Vicari's proposed forty special interrogatories. "The decision to use a general verdict rather than a special verdict . . . is a matter of discretion" to which we give especially high deference. *Martin v. Texaco, Inc.*, 726 F.2d 207, 217 (5th Cir. 1984).[5] The general verdict form accurately stated the determinative factual question for the jury, whereas the proposed forty special interrogatories are confusing, duplicative, and often irrelevant. The court did not abuse its discretion by refusing to use the proposed interrogatories.

## VI.

Finally, Vicari contends that the court erred by awarding Cableguard pre-judgment interest.[6] Reviewing the award for abuse of discretion, *Reyes-Mata v. IBP, Inc.*, 299 F.3d 504, 507 (5th Cir. 2002), we affirm.

Louisiana law applies to a motion for pre-judgment interest under the Miller Act. *United States ex rel. Lochridge-Priest, Inc. v. Con-Real Support Group, Inc.*, 950 F.2d 284, 287-88 (5th Cir. 1992). In Louisiana, interest is recoverable on a contractual debt from the time the debt becomes due, unless otherwise stipulated. *Corbello v. Iowa Prod.*, No. 2002-C-0826, 2003 La. LEXIS 613, at *50 (La. Feb. 25, 2003), *rehearing granted in part on other grounds*, 2003 La. LEXIS 1913 (La. June 20, 2003).[7] The Phoenix-Cableguard contract therefore determines the assessment of pre-judgment interest against the payment bond. *Lochridge-Priest*, 950 F.2d at 289. Under that contract, Phoenix's debt to Cableguard became due ten days after Cableguard completed performance. The jury found that Cableguard completed performance in October 1998. Thus, the court rightly allowed pre-judgment interest from that date.[8]

AFFIRMED.

---

[5] "[T]here ought never be a reversal for use or nonuse of special verdicts." 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2505, at 165 (2d ed. 1995).

[6] Vicari argues that Cableguard is not entitled to any pre-judgment interest, but does not dispute the court's calculation of that interest.

[7] *See also Schiro-Del Bianco Enters., Inc. v. NSL, Inc.*, 765 So. 2d 1087, 1092 (La. App. 4th Cir), *writ denied*, 774 So. 2d 146 (2000) ("In an action on a building contract, interest is recoverable from the time the debt becomes due unless otherwise stipulated.").

[8] Vicari relies on *Roques v. Alfonso*, 399 So. 2d 1294, 1296 (La. App. 4th Cir. 1981), holding that interest on "[a]n unliquidated claim is due from the time it becomes ascertainable." In *Roques*, however, the parties disputed both the amount of the debt and a potential offset. This cases involves no such disputes.