BROWN, Chief Judge.
hln 2004, MKR Services, L.L.C. (“MKR”) approached Dean Hart Construction, L.L.C. (“DHC”) for assistance in designing and building an upscale 11-unit apartment complex in West Monroe, Louisiana. Before the parties reduced their agreement to writing, DHC prepared a proposal of the project to assist MKR in obtaining financing from Richland State Bank. After MKR and DHC presented the proposal to Richland State Bank, MKR advised DHC that it needed to present a construction contract and a set of plans to Richland State Bank in order to receive a loan for the project.
On March 7, 2006, MKR and DHC entered into a contract entitled “Dean Hart Construction Company, L.L.C., Lump Sum Construction Contract.” This contract, written by DHC, stated that the lump sum price for the work to be performed was $605,000, or more specifically $55,000 per unit. The contract further split the design/build process into multiple phases, with certain amounts of money due at different phases and, in the event of cancellation, escalating cancellation fees dependent on which phase the project was in. Lastly, the contract also provided that MKR could make alterations, deviations, additions, or omissions from the drawings, plans, and specifications, but that DHC shall value or appraise such alterations, and add to or deduct from the amount any excess or deficiency occasioned by such changes. Any requested changes were required to be documented by a written change order signed by both DHC and MKR.
After being paid for work performed in phases I and II, DHC began performing work as set forth in phase III. During phase III, DHC sent Diane Humble, a decorator, to MKR for the selection of building materials. |2The building materials that MKR had to select from did not reference any prices or designate which materials were within the construction budget.[1] Furthermore, during phase III the plans were submitted to several governmental and utility entities in order to obtain approval of the plans and to secure any permits needed.[2]
*564 After receiving responses from the governmental and utility entities, Bill Brasher, an operations manager for DHC, began conducting an estimation of construction costs. Brasher met with MKR on October 11, 2006, and informed it that the project would incur cost increases of $94,505. DHC claimed that the increase was a result of changes to the plans required by the governmental and utility entities, the additional costs associated with the more expensive building materials selected by MKR and the costs of adding one more a/c unit per apartment, as requested by MKR.[3]
A subsequent meeting was held between MKR and DHC on October 24, 2006. At this meeting DHC informed MKR that it could not build the apartment complex for $605,000 unless plans were made to reduce or eliminate costs. No agreement was reached by the parties.
On January 3 and 9, 2007, DHC sent correspondence to MKR placing them in default for not approving the final plans and specifications within a | ¡¡timely manner. Further, the correspondence requested payment of $27,485.15 for MKR’s alleged default.
MKR filed suit against DHC on February 14, 2007, alleging a bad faith breach of contract and requesting damages. DHC answered MKR’s suit and filed a reconven-tional demand on March 6, 2007. MKR filed its answer to the reconventional demand on March 26, 2007, and an amended answer on May 1, 2008.
Trial was held on June 25-26, 2008. The trial court found that DHC breached its obligation to construct the apartment complex for the lump sum price of $605,000, rendered judgment in favor of MKR in the amount of $13,075, and dismissed DHC’s reconventional demand. The judgment amount comprised the monies that MKR paid DHC in phases I and II, as well as a portion of the amount MKR paid DHC for a partially completed site clearing.
DHC has appealed the adverse judgment, and MKR answered the appeal. We affirm.

Discussion

Contracts have the effect of law for the parties thereto. La. C.C. art. 1983. To interpret a contract, courts must determine the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
There are three basic types of construction contracts recognized by Louisiana jurisprudence: lump sum contracts, cost plus percentage of the 14cost contracts (percentage contracts), and cost plus a fixed fee contract. Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc., 99-1237 (La.App. 4th Cir.05/24/00), 765 So.2d 1087, writ denied, 00-2509 (La.11/13/00), 774 So.2d 146. The difference between both the cost plus a fixed fee contract and the percentage contract, and a lump sum contract, is that the two former types of contracts assure the contractor’s profit, whereas on a lump sum contract it is possible that the contractor’s anticipated and expected profit may turn into a loss because of a low bid or the rising prices of materials and/or labor. Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941).
In the case sub judice, the trial court determined that the parties entered into a lump sum contract, and that as a result of DHC’s refusal to perform its obligation for the agreed upon amount, it had breached *565 the contract. The trial court further found that there was no evidence to support DHC’s position that the additional costs it was demanding were the result of alterations requested by MKR and/or governmental entities. The trial court determined, however, that DHC’s breach was not committed in bad faith. After reviewing the record we do not find that the trial court erred in making its determinations.
The parties executed a contract entitled “Dean Hart Construction Company, L.L.C., Lump Sum Construction Contract.” The only price referenced in the document, which DHC drafted, was the lump sum price of $605,000, and that amount included “all labor and materials, sales tax and permits required for completion of the work in accordance with the Final | .^Drawings, Plans and Specifications attached hereto.” The final drawings, plans and specifications, however, were not attached thereto. Thus, it appears as if DHC put the proverbial cart before the horse by blindly contracting to build MKR an upscale 11-unit apartment complex for the lump sum price of $605,000 prior to actually making the determination if such was feasible and/or profitable.
DHC contends that it could have constructed the apartment complex for the agreed upon price were it not for the additional costs occasioned by MKR’s design changes and “extravagant” material selections and the required changes of governmental and utility entities. The evidence in the record reflects that DHC presented MKR an overages list which detailed the exact overage amount that resulted from the required and requested changes. However, other than DHC’s self-serving testimony, the only evidence in the record reflecting requested or required changes is a letter from the State Fire Marshal stating that the submitted plans indicated a deficiency in stair design. Moreover, the contract specifically stated that in order for MKR to make any alterations, deviations, additions, or omissions from the drawings, plans, and specifications, a written change order must be signed by both MKR and DHC, and at that time DHC will value or appraise the alteration and add to or deduet from the amount agreed to be paid. Thus, based upon the wording of DHC’s contract, the only instance in which the lump sum price would be adjusted is after a written change order is signed by both MKR and DHC. DHC failed to put forth any written change order to justify increasing the lump sum price by $94,505.
biDHC attempts to argue that the contract was not in fact a lump sum contract. This argument is completely without merit. The contract refers to the “Lump Sum” price no less than seven times, and it only allows for alterations after a written change order has been approved and signed by both parties. This inflexibility is the essence of a typical lump sum construction contract.
Accordingly, we find that the trial court did not err in determining that DHC breached the contract by refusing to perform its obligation of constructing the apartment complex for the agreed upon lump sum price.
Whether it breached the contract or not, DHC asserts that it should be able to retain the payments made by MKR for services rendered during phases I and II. In its written reasons, the trial court states that because MKR did not receive completed plans and specifications that might be used to build an apartment complex it “cannot conclude that the money paid at the design phase of this contract produced anything of value to [MKR].” Noting that DHC claims that several governmental and utility entities were requiring that significant changes be made, and the lack of any evidence in the record to *566 show that MKR received a final set of plans in which any of those changes were integrated, we cannot find that the trial court erred in determining that MKR did not receive anything of value.
In its answer, MKR contends that the trial court erred in failing to find that DHC committed a bad faith breach, as well as in failing to award damages for loss of income.
17An obligor in bad faith is liable for all the damages, foreseeable or not, that ai-e a direct consequence of his failure to perform. La. C.C. art. 1997. The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives. Bond v. Broadway, 607 So.2d 865 (La.App. 2d Cir.1992), writ denied, 612 So.2d 88 (La.1993).
MKR asserts that DHC fabricated cost increases in order to cover its underbidding of the construction. While there may have been a lack of evidence to justify the $94,505 price increase, there was a modicum of evidence that showed that certain changes would have to have been made in order to make the apartment complex compliant with the State Fire Marshal’s requirements. Based upon this, and the claims of DHC that other changes were necessitated, the trial court concluded that DHC did not commit a bad faith breach. We do not find that the trial court was clearly wrong in this determination.
MKR argues that even if DHC was in good faith, DHC should be liable for MKR’s loss of income resulting from DHC’s breach. MKR asserts that 12 months of lost profits, based upon calculations prepared by DHC in preparation of MKR receiving its loan, would be reasonable.
Louisiana law is well settled on the principle that speculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits; there must be definite proof. Jackson v. Lare, 34,124 (La.App. 2d Cir.11/01/00), 779 So.2d 808. In the matter presently before us, MKR is attempting to argue that DHC should have foreseen that it would lose |s$26,945.99 in profits during the first 12 months. While the amount might seem specific, it is nothing more than mere conjecture. The amount is based upon the 11-unit complex being fully occupied for the entire 12 months. There is no way to make that determination without speculating. Accordingly, we find that the trial court did not err in failing to award MKR damages for lost profits.

Conclusion

For the reasons stated herein, the judgment of the trial court is affirmed. Costs of this appeal shall be split equally between the parties.

. MKR states that it assumed that all options presented were within the budget. Conversely, DHC alleges that MKR knew the selections it made were not within the budget.

. According to DHC, the City of West Monroe only approved the construction of ten units, but MKR could have potentially obtained a variance to build the eleventh unit.

. MKR states that it never made a final decision to install any extra a/c units.