837 So.2d 54 (2002)
Stephen Ray BURDETTE
v.
Ron DRUSHELL.
No. 2001 CA 2494.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Rehearing Denied February 3, 2003.
*57 Michael L. Hyman, Baton Rouge, Counsel for Defendant/Appellant Ron Drushell.
James S. Holliday, Jr., Baton Rouge, Counsel for Plaintiff/Appellee Stephen Ray Burdette.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
This civil action arises from an oral contract for the completion of construction and renovation of a residence. The defendant, Ron Drushel[1], has appealed a money judgment for the balance of labor and *58 materials alleged to be owed by him to the plaintiff, Stephen Ray Burdette, together with awards for attorney's fees and damages. Defendant also appeals that portion of the judgment recognizing a privilege against his property under the Louisiana Private Works Act.[2] For the reasons set forth below, the trial court's judgment is reversed in part, amended in part, and, as amended, affirmed in part.

I. FACTUAL AND PROCEDURAL BACKGROUND
On March 13, 1994, Mr. Drushel made the decision to purchase property which included an unfinished "camp." Two days later, on March 15, Mr. Drushel arranged for Mr. Burdette, a friend and carpenter, to informally inspect the building and to share his thoughts on costs of completion. Mr. Burdette agreed with another estimate that the building could be completed for approximately $35,000.00. Several weeks later, Mr. Drushel contacted Mr. Burdette and proposed that he undertake the completion of the camp. The parties met on or about June 7, 1994, and entered into an oral agreement to that effect. It is undisputed that no fixed price for labor and materials was agreed upon, and that the terms of the agreement provided that plaintiff would perform the job on a "costs plus" basis. The contract was never reduced to writing, and the scope of work was never clearly defined.
After plaintiff commenced work on the renovation and refurbishing project, defendant requested numerous significant changes to work phases completed or in progress, and insisted upon the use of premium materials (such as red oak for the interior woodwork), requiring an added level of craftsmanship. During the course of construction, plaintiff submitted, and defendant paid without protest, two interim invoices totalling $62,519.00.
After the work had proceeded for about five months, defendant became dissatisfied with the progress towards completion of the camp, and terminated the contract in late November of 1994. Plaintiff did not file for record a written notice of contract prior to beginning the work.
This litigation commenced with the filing of plaintiff's petition, styled as a "Suit to Enforce Lien." Plaintiff alleged that he performed labor and furnished materials necessary for the work on the camp, that the amount of $48,864.21 due had not been paid, and that he had filed and served a "Labor and Materialmen's Lien [notice] and Statement of Claim" relating to the subject property. Plaintiff accordingly claimed a privilege against the property for the contractual amount due, as well as a money judgment for that amount, damages, legal interest from the date of judicial demand, costs, and a reasonable attorney's fee.
Defendant answered, generally denying liability. Later, in a supplemental and amended answer, he raised the defense that plaintiff did not properly perfect the privilege. Defendant also alleged that plaintiff overcharged him, and that he was entitled to reimbursement for all amounts paid in excess of reasonable charges for the work done, as well as additional incurred expenses required to complete the work on the camp.[3]
*59 Following a protracted discovery dispute relating to a request to inspect the premises, this matter was set for bench trial on June 13-15, 2000.
Following the trial, the trial court took the case under advisement for decision. On November 14, 2000, the trial court issued its written reasons for judgment, finding that plaintiff was entitled to recovery of the full sum of $44,365.94 claimed as of the time of trial, recognition of the privilege claimed in that amount, attorney's fees of $2,500.00, and damages of $5,000.00. However, the trial court expressly denied the prior motion for contempt referred to the merits. On January 3, 2001, the trial court signed the judgment prepared by plaintiff's counsel at its direction. From that judgment, defendant appeals.

II. THE ISSUES ON APPEAL
Defendant contends the trial court erred (1) in finding that plaintiff met his burden of proof as to the sum awarded; (2) by admitting third-party invoices into evidence without testimony from the third parties; (3) by considering expert testimony from plaintiff's expert witness; (4) in awarding duplicative damages; and (5) in awarding attorney's fees.

III. STANDARD OF REVIEW
As an appellate court, we cannot set aside the trial court's factual findings unless we determine there is no reasonable factual basis for the findings and the findings are clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). Thus, if the findings are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the "manifest error" or "clearly wrong" standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Insurance Company, 94-1252, pp. 6-7 (La.2/20/95), 650 So.2d 742, 746-47.

IV. RECOVERY UNDER THE COSTS PLUS CONTRACT

A. DISCUSSION
The contract involved here was a "costs plus" contract. A "costs plus" (costs plus percentage of costs) contract, or a "percentage" contract, is a construction contract in which the owner agrees to reimburse the contractor for the costs of material and labor and to pay a percentage of those costs as his profit. Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc., 99-1237, p. 4 (La.App. 4th Cir.5/24/00), 765 So.2d 1087, 1089-90, writ denied, 2000-2509 (La.11/13/00), 774 So.2d 146.
When a contractor asserts a claim on a "costs plus" contract and the owner denies being indebted to the contractor, the contractor has the burden of proving each item of expense in connection with the job and he must itemize each expenditure made by him. American Plumbing Company, Inc. v. Hadwin, 483 So.2d 169, 172-73 (La.App. 2nd Cir.1986).
*60 In support of the balance claimed, plaintiff introduced his final statement for services previously submitted to defendant, in the original amount of $48,864.21, as well as copies of his labor time records, materials invoices, and, over defendant's objection, the labor and materials invoices of other contractors (referred to for convenience herein as subcontractors) supporting that amount. The final statement contains an item of $18,563.87, designated as "overhead and profit," representing 20% of the total claimed. Plaintiff called defendant as an adverse witness, and in connection with that examination introduced as his own exhibit a videotape taken by defendant on November 24, 1994, depicting the state of the premises then and defendant's narration regarding the work performed. Plaintiff also called as witnesses one of his own carpenters and two of the subcontractors he engaged for the project.
Defendant testified on his own behalf regarding the work done by plaintiff and various alleged deficiencies, and also called Brenda Bourgeois, his girlfriend, to corroborate his testimony in that regard. Additionally, defendant called plaintiff as an adverse witness under cross-examination.
In addition to their own testimony and that of supporting witnesses, the parties presented the testimony of their respective expert witnesses, both of whom testified in detail regarding their analysis of the nature of the work, the type of residence being constructed, the labor and materials documented, and the correlation between the labor and materials charged and the ultimate product.
With the exceptions described herein, we agree with the trial court's finding that plaintiff met his burden of properly itemizing the costs making up the price of his work through his testimony and that of his witnesses, together with the documentary evidence.

B. THE AMOUNT OF THE OBLIGATION
Plaintiff initially sought recovery of the principal amount of $48,864.21, representing the unpaid balance of labor and material charges for plaintiff's work, as well as that of the subcontractors whose services he procured. The evidence demonstrated, and plaintiff acknowledged at trial, that defendant paid the invoice of Appliance Distributors for kitchen appliances installed in the camp, and was entitled to a credit, plaintiff claiming a revised balance of $44,365.94. This is the principal amount ultimately awarded. At trial, through the testimony of his expert, Mr. Clary, plaintiff conceded that the balance should also have been reduced by the overhead and profit margin of 20% added to Appliance Distributors' invoice. The invoice in the record is in the amount of $4,172.04. Thus, the trial court erred in failing to credit that amount, and the judgment must accordingly be reduced by $834.41.

(1) ADMISSION OF THIRD-PARTY INVOICES
Defendant contends that the trial court erred in allowing the introduction of third-party invoices into evidence, since they constituted inadmissible hearsay. Plaintiff counters that the records constitute part of his own "business records" and therefore fall within the corresponding exception to the general rule against hearsay evidence.
La. C.E. art. 803(6) sets forth the "business records" exception to the hearsay rule:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

*61 * * *
(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term, "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.
Defendant contends that the third-party invoices and receipts introduced by plaintiff were inadmissible hearsay evidence, and were not admissible as plaintiff's "business records," since the third parties who generated the records were not called as witnesses to authenticate them and to corroborate the information contained therein.[4] We find that the trial court did not abuse its discretion by admitting and considering the third-party invoices.
A contractor working under a "costs plus" contract is under the duty of submitting to the owner an itemization of each and every expenditure made by him, and a bill in globo for numerous items will not meet that requirement. Wendel v. Maybury, 75 So.2d 379, 382-83 (La.App. Orl.Cir.1954). In the Wendel case, the contractor was criticized for submitting a bill listing labor and materials he supposedly paid in one lump sum, without any itemization of the nature of the charges *62 making up the total. The stated purpose of the principle enunciated in Wendel was the protection of the owner from vague or duplicative charges by providing ready means of corroboration of the costs. Attaching copies of the very invoices upon which the general contractor bases his claim for costs reimbursement and profit may fulfill the requirement of an itemization by which an owner is protected from vague or inflated costs items.
We conclude that in appropriate situations, "incorporated business records" may fall within the ambit of the business records exception to the hearsay rule. Defendant argues that Louisiana's rule requires all "business records" be literally "made" by the business keeping them, suggesting the differences in phraseology from its Federal counterpart mandate that conclusion.[5] Nothing in the wording of the article itself precludes the introduction of "incorporated business records" originally generated by another business, if properly authenticated[6] and determined to be trustworthy by the trial court. The Comments suggest that the article was drafted to conform to "the clear intent of Federal Rule 803(6)[and] the cases interpreting that rule." La. C.E. art. 803(6), Comments (a), (b). Accordingly, it is appropriate to review the jurisprudence interpreting the analogous Federal rule for guidance on this issue.
Federal courts interpreting the nearly identical language of F.R. Evid. 803(6) have held that third-party invoices received and held by a party in its regular course of business are admissible under circumstances which demonstrate trustworthiness, such as where adequate foundation testimony to the foregoing effect is offered by the party, even without testimony from the third party preparing the invoices. See United States v. Flom, 558 F.2d 1179, 1182 (5th Cir.1977), 2 Fed. R.Evid. Serv. 451.[7]
In the case of Sundbery's, Inc. v. Price, 117 So.2d 328, 329-30 (La.App. 1st Cir.1960), a supplier of building materials sought recovery for the price of materials *63 supplied for the remodeling of the defendant's residence. The defendant contended that legally sufficient proof of delivery of the materials was not presented. The plaintiff did not attempt to secure the testimony of its drivers who delivered the materials, but its manager identified its dray receipts showing delivery, bearing the signature of the defendant's contractor's foreman. The invoice related to the dray receipts specifically designated the material as assigned to defendant's job. The defendant objected to the receipts as being hearsay, and that the signature was not properly authenticated. The court found that the signed dray receipts were sufficient proof of delivery, where no contradictory proof of non-delivery was put forth.
In this case, for example, we observe that although the Gabriel Building Supply materials invoices were not originally prepared by plaintiff himself, most were signed by him acknowledging receipt of the materials described therein for this specific job location.[8] On their face, they show the receipt of lumber, moulding, frames, nails, paint, steam bath components, and other supplies installed by him on this job.
Distilling the principles expressed in the codal article itself and the foregoing cases, we conclude that the trial court's admission of the described third-party invoices, cash receipts, and plaintiff's cancelled checks was not error, given the reasonable discretion accorded it under our law relating to the admission of trial evidence. The record demonstrates that most of the third-party invoices became an integral part of plaintiff's own work documentation, plaintiff had firsthand knowledge of the transactions and their corresponding invoices, and the invoices were in fact provided to defendant as part of the necessary "costs plus" itemization from which defendant could independently confirm the accuracy of plaintiffs' charges.[9] Plaintiff and his expert, Mr. Clary, offered direct testimony verifying the incorporation of the invoices' materials into the work, and both relied upon the accuracy of the invoices in presenting an evidentiary summary of the voluminous materials and labor records.
Although courts should generally be wary of admitting third-party "hearsay within hearsay" documents under the guise of "incorporated business records," their admission is proper in cases where they are customarily used as such, the parties contemplate their use for accounting or verification purposes, such as in a "costs plus" construction contract, and proper proof of trustworthiness is established. Louisiana does not have the "best evidence" rule. Although these third-party invoices and receipts are not the "best evidence," they are "some evidence" of the debt owed, which, with other corroborating evidence, may be considered by the trial court in determining that the party carried its burden of proof. Admissibility does not mean sufficiency: "Evidence may be admissible under a hearsay exception but insufficient to carry the offering party's burden of proof, or may otherwise be considered by the fact-finder as weak or unpersuasive evidence." La. C.E. art. 803(6), Comment (c).
*64 Our opinion does not mean that "incorporated business records" are always admissible. Better practice would be for the proponent of such evidence to submit a request for admissions to the other party, to obtain an evidentiary stipulation from the other party, or to secure a certificate of authenticity of its records from the third party.[10] We simply decide here that the trial court did not abuse its discretion as to the admission of evidence under the facts of this case. Under the modern rules of discovery, there is less chance of prejudice to the opponent of the business record:
Given the extensive opportunity for pre-trial discovery in civil cases, the opponent of the evidence will normally know of the proponent's intention to offer the hearsay business record prior to trial and, if desired, may himself subpoena the declarant to testify in court as well as those who have recorded or kept the information received.
George W. Pugh, Robert Force, Gerard A. Rault, Jr., & Kerry Triche, Handbook on Louisiana Evidence Law, La. C.E. art. 803(6), Authors' Notes, (2), at 547 (2002 ed.)
We find that the element of payment set forth in the paid invoices, cash receipts, and plaintiff's checks, supported by his testimony, fulfilled the necessary elements of reliance and verification, justifying their admission. See M. Carbine Restoration, Ltd. v. Sutherlin, 544 So.2d 455, 458-59 (La.App. 4th Cir.1989), writ denied, 547 So.2d 355 (La.1989); Provenzano v. Populis, 428 So.2d 556, 558-59 (La.App. 4th Cir.1983). Likewise, the materials invoices signed by plaintiff which were received on the jobsite provide support for his verbal identification of them as incorporated business records, and also corroborate his testimony that the materials were incorporated in the camp, a necessary element of his burden of proof as contractor. Sundbery's, Inc. v. Price, 117 So.2d at 329-30.
This does not end our analysis of the third-party documents, however. The third-party "proposal" of Harold Norman, the vinyl siding subcontractor, even if arguably treated as an invoice by plaintiff, is clearly inadmissible hearsay, and should have been excluded. See Provenzano, 428 So.2d at 559; Dikert v. Ruiz, 231 So.2d 633, 635 (La.App. 4th Cir.1970). The record contains no evidence demonstrating plaintiff's reliance on and verification of the reliability of the "proposal," including but not limited to payment. On its face, the document does not suggest that the work was in fact accomplished for the price stated.[11] The trial court therefore erred in admitting the "proposal."

(2) ADMISSION OF EXPERT TESTIMONY
Defendant contends the trial court committed error in accepting the testimony of plaintiff's expert, Mr. James Clary, as an expert in the field of construction, and in refusing to strike his testimony after given, on the grounds that his particular expertise was not in the field of construction. He further suggests that the testimony was not helpful in the determination of the reasonableness of the charges for labor and materials for the work. Defendant maintains the trial court's rejection of the testimony of his expert, Mr. Webb, and his interpretation of the Means Building Construction Cost Data reference was error.
*65 A trial court has great discretion in determining whether to qualify a witness as an expert, and such discretion will not be disturbed on appeal in the absence of manifest error. Lemaire v. CIBA-GEIGY Corporation, XXXX-XXXX, p. 16 (La.App. 1st Cir.6/22/01), 793 So.2d 336, 349. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Fountain v. Fountain, 93-2176 (La.App. 1st Cir.10/7/94), 644 So.2d 733, 738. The effect and weight to be given expert testimony is within the broad discretion of the trial judge. Thornton ex rel. Laneco Construction Systems, Inc. v. Lanehart, 97-2871, p. 5 (La.App. 1st Cir.12/28/98), 723 So.2d 1127, 1130. Further, the rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990). Although usually consisting of opinion testimony, expert testimony need not be in such form to be admissible. La. C.E. art. 702 provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, an expert witness may testify "in the form of an opinion or otherwise." [Our emphasis.]
Mr. Clary, a civil engineer, testified that he met with plaintiff, reviewed with him the labor and materials records and invoices and the work aspects they represented, and personally inspected the residence. Mr. Clary opined that the amount of labor materials billed by plaintiff appeared to conform with the scope of the job, particularly considering the quality of workmanship and materials and the work changes initiated by defendant. He further testified that the profit margin or markup of 20% for this "costs plus" contract was quite reasonable compared to the standard in the industry, corroborated by the reliable Means Repair & Remodeling Cost Data reference.
Defendant's expert architect, John Webb, testified that plaintiff charged defendant for approximately 2,500 man-hours of labor (excluding the labor of the subcontractors) for his work on the residence, well in excess of what he felt was a reasonable "average" nationwide figure of 1,933 man-hours in all trades to completely construct a similar residence. He further testified that he found some instances where the amount of materials purchased was substantially in excess of what he calculated was actually needed. On cross-examination, however, he admitted that his analysis of plaintiff's man-hours did not take into consideration the work performed on the garage and the adjacent boat house and pier.
The record shows that Mr. Clary was a professional civil and consulting engineer of many years' experience, and that he had previously been accepted as an expert in the fields of construction and engineering in numerous Louisiana courts. We find no abuse of discretion in the admission of his testimony. Even if Mr. Clary's opinions regarding the quality of the work and materials were to be discounted entirely, it cannot be concluded that his factual testimony relating to his inspection of the premises, expert summary and analysis of materials and labor records, and his expert explanation of contractors' practices, overhead and profit margin, and the Means Building Construction Cost Data and Means Repair & Remodeling Cost Data references were not of benefit to the trial court.
The weight and credibility given Mr. Clary's testimony by the trial court are entitled to great deference by this court, and we find no abuse of its discretion in *66 denying defendant's motion to strike the testimony.
We agree that plaintiff is entitled to judgment for those portions of the contractual price representing subcontractors' charges, proven by competent evidence to have been paid by plaintiff. However, he cannot recover those subcontractors' charges for which proof of payment was not shown. Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc., 99-1237, at pp. 7-8 (La.App. 4th Cir.5/24/00), 765 So.2d 1087, 1091-92, writ denied, 2000-2509 (La.11/13/00), 774 So.2d 146. See also Provenzano, 428 So.2d at 559.
The brick mason subcontractor, Ernest Thompson, testified at trial regarding the services provided and specifically identified his third-party invoice for $3,850.00 to plaintiff. However, plaintiff is not entitled to judgment for that amount, since it was not proven to have been paid. The original judgment amount must be reduced by that amount and by a figure representing plaintiff's corresponding 20% markup for overhead and profit, or $770.00. Likewise, as previously discussed, the amount of the "proposal" of Mr. Norman, the vinyl siding subcontractor, or $4,050.00, must be deducted from the principal amount of the judgment, together with plaintiff's overhead and profit margin of 20%, or $810.00.[12]
The evidence establishes that it was necessary for the electrical subcontractor, Roshto Electric, Inc., to substantially re-install the entire original electrical system, adding considerably to the project cost. Roshto Electric, Inc.'s first invoice for $867.00 showed on its face it was paid. The testimony of the head electrician, Shelby Roshto, confirmed that payment and that there was a second payment received. As there was only one later invoice submitted to plaintiff from Roshto Electric, Inc., the trial court correctly allowed plaintiff recovery of Roshto Electric, Inc.'s total charges of $3,565.00, together with $713.00, representing his incremental 20% markup.
The photographs and videotape depicting the subject property confirm the subject property's status as a "custom" residence, as described by both experts. With some relatively minor exceptions, both defendant and his expert architect admitted that the quality of the work accomplished by plaintiff was good. Plaintiff introduced into evidence an appraisal of the subject property performed by Clyde R. Tucker, Jr., indicating an appraised fair market value of $190,000.00 as of November 4, 1999. The appraised value lends additional support to the trial court's resolution of the dispute in plaintiff's favor. Defendant's prompt and uncomplaining payment of over $62,000.00 in prior interim bills belies his claimed reliance upon a $35,000.00 or $36,000.00 "estimate" for completion of the building. See, e.g., Lagasse v. Allen, 219 La. 745, 749, 54 So.2d 6,7 (La.1951).
In summary, plaintiff is not entitled to a money judgment for the amounts of subcontractors' invoices for which he did not properly prove payment. These charges include the following:

Younger Miller (Plumbing): $ 419.00 (unpaid balance)

*67
Ernest Thompson (Brick Mason): 3,850.00
Harold Norman (Vinyl Siding): 4,050.00
Steve Breakfield (Air Conditioning): 470.00
Victor Methview [sic]: 221.00

The trial court's monetary award is reversed in part and amended to disallow those charges, totalling $9,010.00, and their corresponding markup for overhead and profit, in the total amount of $1,802.00, for a balance of $32,719.53. As to the factual finding warranting judgment against defendant for the balance, we note that the trial court specifically found that the quality of plaintiff's work was good. Such finding was essentially a credibility determination, and, as such, the judgment must be affirmed in part.

(3) THE AWARD OF DAMAGES
Defendant assigns as error the trial court's award of "duplicative damages." Defendant offers no explanation nor argument in his brief relating to this assignment of error, nor is any supportive authority cited. Nevertheless, it is obvious that defendant takes issue with the propriety of the award of unspecified "damages" in the amount of $5,000.00. The judgment and written reasons for judgment are both silent as to the evidentiary basis for that award. The trial record contains no testimony or other evidence as to "damages" or their amount. Plaintiff put forth no evidence of any tangible consequential damages, such as idled equipment, overhead, or lost profit. See Robinson, "Construction Law: Elements of Contractors' Damages," 38 La. B.J. 247 (Dec.1990). Plaintiff likewise offers little support in his brief regarding the basis for the award, except to contend that it represented consequential damages under La. C.C. art.1994, incurred by reason of defendant's failure to pay the monetary balance due under the contract.
Where the required performance consists of payment of a sum of money, "damages for delay in performance are measured by the interest on that sum from the time it is due, ... and whatever loss [the obligee] may have suffered he can recover no more." La. C.C. art.2000. Since plaintiff prayed for and was awarded legal interest on the contractual balance due him[13], any additional award based upon defendant's delay in payment is clearly duplicative of the judgment interest. The trial court's judgment is accordingly reversed in part to vacate the award of damages in the amount of $5,000.00.

V. THE PRIVATE WORKS ACT PRIVILEGE
We first note that it is undisputed that the plaintiff's statement of privilege was filed timely after the substantial completion or abandonment of the work, as required by La. R.S. 9:4822. Defendant challenges the trial court's recognition of *68 the privilege sought by plaintiff, contending that plaintiff is not entitled to recognition of any privilege in his favor, having failed as a general contractor to comply with the mandatory provisions of La. R.S. 9:4811(A).
Although the Louisiana Private Works Act must be strictly construed as being in derogation of general contract law, courts should not overlook the clear legislative intent, which is to protect contractors, laborers, materialmen, and subcontractors engaged in construction and repair projects. Hibernia National Bank v. Belleville Historic Development, L.L.C., XXXX-XXXX, p. 7 (La.App. 4th Cir.3/27/02), 815 So.2d 301, 305-6, writ denied, (La.6/14/02), 818 So.2d 785.
Even though plaintiff does not claim the status of general contractor for the work at issue, it is readily apparent that he met the statutory definition of "general contractor" in the Louisiana Private Works Act. A contractor "who contracts to perform all or substantially all of a work" is a "general contractor." La. R.S. 9:4807(B)(1). See also Executive House Building, Inc. v. Demarest, 248 So.2d 405, 410-11 (La.App. 4th Cir.1971). While his testimonial reference to the other contractors providing services as "subcontractors" does not conclusively determine their status as to him, the record clearly demonstrates that he coordinated the engagement of their services and supervised their work, assuming the de facto role of general contractor. Additionally, he included their charges in his billing to defendant as part of the services and materials he provided, and added his overhead and profit margin of 20% to most if not all of their charges submitted through him. In light of the undisputed evidence, we find the trial court's implicit conclusion to the contrary is clearly wrong.
Having failed to properly file written notice of his contract in the mortgage records as required by La. R.S. 9:4811(A), plaintiff is not entitled to the privilege granted a "general contractor" under La. R.S. 9:4801. La. R.S. 9:4811(D). The fact that a "costs plus" contract is involved does not relieve the general contractor from the obligation of filing the notice of contract; it is incumbent upon him to "reasonably estimate" the price of the work prior to beginning work if there is the possibility of the price exceeding $25,000.00. La. R.S. 9:4811(A)(4) and Comment (b).
We next address whether plaintiff is entitled to recognition of any privilege at all against the subject property, and, if so, the nature and amount of such privilege.[14] Plaintiff contends that the privilege sought and ultimately recognized by the trial court was either that of a "laborer" under La. R.S. 9:4801(2) or a non-general or ordinary contractor under La. R.S. 9:4801(1).
Defendant contends that La. R.S. 9:4811(D) bars recognition of any privilege at all in favor of plaintiff, since plaintiff occupied the status of "general contractor" and neglected to record a written notice of his contract. We disagree. La. R.S. 9:4822 makes a clear distinction between a "general contractor" who has properly recorded *69 a notice of contract and "other persons granted a privilege under R.S. 9:4801" when notice of a general contract is not filed. Included within the latter category is a "general contractor" who fails to record a notice of contract, to the extent he performed or provided labor or services other than the supervisory work generally performed by a "general contractor." Tharpe and Brooks, Inc. v. Arnott Corporation, 406 So.2d 1, 5-6 (La. App. 1st Cir.1981).
Even though plaintiff acted as "general contractor," he also occupied the status of an ordinary "contractor" under La. R.S. 9:4807(A) for his carpentry services and related labor and material costs. The record establishes that the parties clearly contemplated plaintiff would personally perform labor under the "costs plus" contract, and that such labor was payable as part of the "costs," separately from the 20% overhead and profit increment.[15] Thus, as such, he is entitled to the privilege granted under LA. R.S. 9:4801(1) to an ordinary "contractor" for "the price of his work," which ranks equally with that granted a "general contractor." The important difference, however, is in the nature of the allowable charges secured by the privilege.
The trial court correctly concluded that plaintiff is entitled to claim a privilege for his own labor and that of his employees under La. R.S. 9:4801(1). City Bank & Trust Company v. Caneco Construction, Inc., 341 So.2d 1331, 1336-38 (La.App. 3rd Cir.1976); Tharpe, 406 So.2d at 5. However, although plaintiff may properly claim a contractor's privilege, it cannot hold the superior ranking of a laborer's privilege under La. R.S. 9:4801(2).[16]
The "price of [the] work" of a general contractor clearly includes the charges of subcontractors he has engaged and paid, since their work for him forms part of the larger work he has undertaken for the owner. See La. R.S. 9:4802(A)(1), (F); La. R.S. 9:4807(C). However, when a general contractor fails to properly file a notice of contract under La. R.S. 9:4811(D), he is not entitled to claim a privilege in that capacity for subcontractors' charges for labor and materials. See Gauguin, Inc. v. Addison, 288 So.2d 893, 897 (La.App. 1st Cir.1973).
In addition to the sum of $3,565.00 paid to the electrical contractor, plaintiff paid St. Joe Brick Works the sum of $985.32 for materials for the brickmason subcontractor, verified by his check No. 2185. He is clearly entitled to judgment against defendant of that sum and its markup, but those figures cannot form part of the privilege in his favor. Likewise, plaintiff cannot claim a privilege for the sum of $515.00 paid by check to Mr. Miller, the plumbing subcontractor, although he is entitled to judgment against defendant for that amount and his markup.
In summary, then, plaintiff is not entitled to recognition of a privilege in his *70 favor for the amount of any charge by or payment to a subcontractor, since he was a general contractor for such charges, and failed to properly file for record a notice of contract. The judgment is further adjusted to deduct the amounts of the payments to Roshto Electric, Inc., Younger Miller, and St. Joe Brick Works ($5,065.32), along with their corresponding 20% markups ($1,013.06.), totaling $6,078.38. He is accordingly entitled to recognition of a contractor's privilege under La. R.S. 9:4801(1) for labor and materials in the total amount of $26,641.15.

VI. THE AWARD OF ATTORNEY'S FEES
Defendant challenges the trial court's award of attorney's fees, on the grounds that neither the terms of the contract nor positive law authorize such award. We agree. There is no evidence that the oral contract at issue provided for such recovery by either party. Plaintiff has not cited, nor have we found, any statutory authority for recovery of attorney's fees by a contractor seeking payment for labor and materials and recognition of a lien under the present facts.[17]
A prior discovery motion seeking attorney's fees and to hold defendant in contempt had been referred to the merits. In connection with that motion, plaintiff introduced a number of exhibits documenting his efforts to compel inspection of the property, as well as his expenses and attorney's fees incurred in pursuing that issue. The only conceivable basis for the award, as recognized by plaintiff in his brief, was a finding that defendant was either in contempt of court or otherwise violated the trial court's prior discovery order relating to inspection of the premises. However, in its judgment and written reasons for judgment, the trial court expressly denied plaintiff's motion for contempt.[18] Neither the judgment nor the reasons for judgment state or even suggest that the trial court granted plaintiff attorney's fees as an alternate sanction under La. C.C.P. art. 1471, in lieu of a contempt order. The motion having been resolved in defendant's favor, it cannot serve as a basis for the award. The trial court's judgment is therefore reversed in part with regard to its award of attorney's fees in the amount of $2,500.00.

CONCLUSION
Initially, we issue the following order:
IT IS ORDERED, ADJUDGED AND DECREED that the motion of the plaintiff, Stephen Burdette, to supplement the record on appeal by filing a certified copy of his "Labor and Materialmen's Lien and Statement of Claim" (notice of privilege) be and is hereby granted.
For the reasons stated above, the portion of the trial court's judgment granting judgment for the contractual obligation claimed is amended to reduce that amount from $44,365.94 to $32,719.53. That portion of the trial court's judgment awarding damages of $5,000.00 is reversed. That portion of the trial court's judgment providing, "The lien filed by plaintiff is recognized *71 with all the rights and damages that flow from that recognition" is vacated and substituted with the following language: "The privilege claimed by plaintiff is recognized under La. R.S. 9:4801(1) for the sum of $26,641.15." That portion awarding attorney's fees in the amount of $2,500.00 is reversed.
The costs of this appeal are assessed 75% to the defendant-appellant, Ron Drushel, and 25% to the plaintiff-appellee, Stephen Ray Burdette.
MOTION TO SUPPLEMENT RECORD GRANTED.
REVERSED IN PART, AMENDED, AND AFFIRMED IN PART, AS AMENDED.
NOTES
[1] The defendant's surname is consistently spelled "Drushel" in his own pleadings and exhibits.
[2] La. R.S. 9:4801, et seq.
[3] This pleading also contained a prayer for judgment awarding him reimbursement and "reasonable damages." However, defendant did not designate this pleading as incorporating a reconventional demand, nor did he request service pursuant to La. C.C.P. arts. 1063 and 1314. Plaintiff understandably did not answer this pleading. Accordingly, issue was not joined as to the claims for reimbursement and damages, and they would now appear to be barred by both res judicata and collateral estoppel. La. C.C.P. art. 1061(B); La. R.S. 13:4231. This result would not prevent consideration of defendant's claim of overcharges as an affirmative defense. La. C.C.P. art. 1005.
[4] Defendant's reliance on the case of Great American Surplus Lines Insurance Company v. Bass, 486 So.2d 789, 794 (La.App. 1st Cir. 1986), writ denied, 489 So.2d 245 (La.1986), is misplaced. The precise issue in that case was whether the plaintiff could properly prove lost profits from his business by means of a list of supplies purchased by him from a third-party supplier, based upon its invoices, where the list was admittedly compiled for trial purposes. Given the fact that the list was not prepared in the ordinary course of business but for litigation purposes, it was properly excluded on that basis alone. We further note that the case of Herlitz Construction Company, Inc. v. Clegg, 378 So.2d 1002 (La.App. 1st Cir.1979), cited in Bass, 486 So.2d at 794, and the cases cited therein were decided long before the enactment of the Louisiana Code of Evidence, embodying a tacit legislative approval of the spirit and intent of the Federal Rules of Evidence. Additionally, Herlitz's holding relating to the third-party records was expressly limited to "the facts of [that] case." Id. at 1006. It did not purport to establish a blanket rule that the "element of reliability" as to incorporated business records must be supplied by the testimony of the third parties. Here, plaintiff was a party to the transactions represented by the invoices and receipts, and initiated the purchases and other transactions personally. He indisputably had firsthand personal knowledge of the factual basis for the third parties' preparation of the documents.
[5] In pertinent part, the language of F.R. Evid. 803(6) differs from Louisiana's counterpart in stating that the record must be "kept in the course of a regularly conducted business activity" (as opposed to being "made and kept") and that "it was the regular practice of that business activity to make the ... record" (as opposed to "make and to keep"), and in not specifically stating that the supplying and recording of information be performed in the course of a regular business activity by a person owing a duty to the business. See La. C.E. art 803(6), Comment (b).
[6] See La. C.E. Art. 901.
[7] See also United States v. Ullrich, 580 F.2d 765, 771 (5th Cir.1978)(Vehicle inventory schedule and vehicle's statement of origin, both prepared by manufacturer, used and kept in the regular course of the victim dealership's business, were in effect "integrated into the records of the dealership," and were admissible as its business records.); Falcon Jet Corporation v. King Enterprises, Inc., 678 F.2d 73, 77 (8th Cir.1982) (A construction company was permitted to introduce third-party invoices for work done on the premises in support of its claim against the defendant for the amount of work, where its witness demonstrated that they were "sufficiently trustworthy."); United States v. Sokolow, 91 F.3d 396, 403-04 (3rd Cir.1996) (The records of an insurance claims adjuster derived in large part from a third-party insurer's records were admissible as business records, where it was a regular business practice to incorporate the insurer's records into its own records, the adjuster relied on the records, and there was "adequate verification or other assurance of accuracy" of the third-party records.); Air Land Forwarders, Inc. v. United States, 172 F.3d 1338 (C.A.Fed.1999) (Third-party records were admissible without firsthand testimony upon a showing that the party incorporated those records into its own, it relied upon those records in its day-to-day operations, and there were other strong indicia of their reliability.)
[8] Those invoices of Gabriel Building Supply which do not bear plaintiff's signature or that of an employee, verifying receipt of the materials, amount to $3,352.94. Plaintiff did identify those invoices as reflecting his purchases of materials used in this job, however.
[9] See Duncan Development, Inc. v. Haney, 634 S.W.2d 811 (Tex.1982), and Houston Shell & Concrete Company v. Kingsley Constructors, Inc., 987 S.W.2d 184 (Tex.App. 14th Dist. 1999), for similar reasoning.
[10] La. R.S. 13:3733(D).
[11] See La. R.E. art. 901(B)(4).
[12] We take note of the verbal admission by defendant in his videotape that vinyl siding was installed after the purchase of the property by a person engaged by plaintiff; however, plaintiff did not sufficiently prove that Mr. Norman was that person, nor that he was paid by plaintiff.
[13] In his petition, plaintiff prayed for "legal interest from the date of judicial demand." Prejudgment interest on a conventional obligation runs from the time the obligation to pay is due, not from the date of judicial demand. La. C.C. art.2000. However, the trial court's judgment, prepared by plaintiff's counsel, specifically limited judgment interest to interest "from date of judicial demand until paid," and plaintiff did not appeal or answer this appeal to seek additional interest from the date the debt was due. Under these facts, we decline to amend the judgment to comply with La. C.C. art.2000, although authorized to do so under La. C.C.P. art.1921.
[14] It is undisputed that the notice of privilege was recorded in the mortgage records as described by the trial court in its reasons for judgment. Although a copy was supposedly attached as an exhibit to the petition, it is not contained in the record on appeal. Nevertheless, it is apparent that the notice was in fact filed, as the trial court's reasons reference not only the date of its filing, but also the mortgage recordation data. Defendant has not challenged the fact of the proper and timely filing of notice. Upon being notified of the omission in the record, plaintiff moved to supplement the record. We grant the motion to complete the record.
[15] Cf. American Plumbing Company, Inc. v. Hadwin, 483 So.2d at 173-74 (general contractor held not entitled to recovery of additional charges for his own carpentry work under "costs plus" contract, where he failed to prove that parties agreed to such charges, in addition to his profit percentage as general contractor).
[16] Comment (c) to La. R.S. 9:4801 explains:

(c) Subsection (2) contemplates that the obligations secured must be for the price of labor or services of an employee. A contractor who renders personal services in the course of performing his contract is not included in this category. The owner is not liable to him for such services but only for the price of the contract. This distinction is significant, primarily because of the priority given to the privileges of employees by Section 4821, infra.
[17] La. R.S. 9:4822(K) was not specifically invoked here, nor were its requirements proven. Neither plaintiff's petition nor the evidence suggests that his claim was one on open account under La. R.S. 9:2781. See Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc., 572 So.2d 178, 183 (La. App. 1st Cir.1990); Hill v. Leach, 98-1817, p. 3 (La.App. 3rd Cir.4/21/99), 734 So.2d 116, 118.
[18] We also note that the award of attorney's fees in the judgment is included in the paragraph of the judgment dealing with the principal debt, not that dealing with the motion for contempt.